884 So.2d 582 (2004)
STATE of Louisiana
v.
Johnny L. JONES.
No. 2003-K-3542.
Supreme Court of Louisiana.
October 19, 2004.
*583 Charles C. Foti, Jr., Attorney General, Eddie J. Jordan, Jr., District Attorney, Val M. Solino, Assistant District Attorney, for Applicant.
Kevin Vincent Boshea, New Orleans, Philip E. Hantel, for Respondent.
TRAYLOR, Justice.
The court of appeal reversed the conviction and sentence of the defendant based upon its belief that the defendant was deprived of his constitutional right to peremptorily challenge jurors. Finding that the court of appeal's reliance on an incorrect minute entry was in error, we reverse the court of appeal's judgment and remand for consideration of defendant's other assignments of error on appeal.

FACTS AND PROCEDURAL HISTORY
On September 3, 1998, an Orleans Parish grand jury returned a bill of indictment charging Johnny L. Jones ("Jones" or "defendant") with the July 29, 1998 first degree *584 murder of his estranged wife, Courtney Russ Jones. It is unnecessary to our resolution of the issue presently before the Court to discuss the facts giving rise to the charges against the defendant which resulted in his conviction. Instead, this opinion will consider those circumstances occurring during the defendant's trial which raised the instant legal question.
During voir dire, New Orleans Police Department Crime Lab Technician Edward Delery was called in the general venire as a prospective juror for this case.[1] Defense counsel challenged Officer Delery for cause based solely upon the fact that he was a police officer with the New Orleans Police Department. The trial judge denied the cause challenge for Officer Delery, finding that the singular fact that he was a police officer did not make him ineligible to be a juror under the law. The defense then moved for a mistrial without stating further reasons or argument. The trial judge denied the mistrial and the defense used one of its peremptory challenges to remove Officer Delery from the jury venire. The jury was selected and sworn in that day.
Before trial began the next morning, the prosecutor became aware that almost three years prior to trial Officer Delery processed several items in the police department crime lab which had been seized from the crime scene in this case. The prosecutor immediately informed defense counsel of this fact and a hearing was held outside the presence of the jury before testimony began.
Officer Delery testified that he was in charge of the Forensic Light Unit of the New Orleans Police Department's crime lab. This section of the crime lab uses chemical processes to determine whether identifiable fingerprints can be found on objects. The report generated in this case showed that Officer Delery had been unable to locate any fingerprints on the objects submitted from the crime scene. Officer Delery used the police item number, and not the name of the defendant or arrested subject, when he worked on a case. Thus, Officer Delery was unaware that he had analyzed any evidence for this particular case when he participated in voir dire questioning the previous day. Officer Delery testified that he analyzed approximately 2000 different items in an average year in approximately 500 separate cases. He had no independent recollection of the items analyzed in this case and became aware that he worked on this case only when he received a subpoena from the defense that morning, after the defense was informed by the state that Officer Delery participated in the investigation. Officer Delery had not discussed the case with any persons in the jury venire, nor had he discussed the case with the prosecutor's office prior to that morning.
Assistant District Attorney Jonathan Friedman also testified at the hearing. He stated that he was assigned to the case the week before trial. His review of the district attorney's case file did not contain the report generated by Officer Delery. Officer Delery's report was contained in the case file of the lead detective. Because the lead detective was out of town when Friedman was assigned to the case, the prosecutor did not obtain the detective's file until jury selection. The prosecutor *585 did not actually review the detective's file until the night after the jury was selected and early that very morning. At 8:15 a.m. that morning, the prosecutor discovered Officer Delery previously analyzed items seized from the crime scene and informed defense counsel of that fact at 8: 45 a.m. Thus, Friedman had no knowledge during jury selection that Officer Delery had worked on the case.
After this testimony was adduced outside the jury's presence, the trial judge asked defense counsel whether he maintained his motion for mistrial. Defense counsel replied affirmatively. The trial judge denied the motion for mistrial finding that, while there may have been some negligence in the handling of the case, there was no ethical violation committed by the prosecutor.
The trial proceeded with the state presenting its case against Jones, including testimony by Officer Delery regarding his processing of evidence seized at the crime scene. In his trial testimony, Officer Delery admitted that he had been a potential juror but that, at the time of voir dire questioning, he was unaware that he had actually performed work in this case. Officer Delery explained to the jury that the work he performed on cases was identified by a case number, and not the name of a defendant. He also explained to the jury that he handled approximately 500 cases a year in which as many as 2000 individual pieces of evidence would be presented for analysis. Officer Delery explained his job in developing fingerprints and was accepted as an expert in the field of developing and identifying latent fingerprints and in the practices and procedures of the New Orleans Police Department crime lab.
After reviewing the report which he generated in 1998, Officer Delery testified that various chemical tests were performed on the evidence seized from the crime scene. No identifiable fingerprints were located on any of the seized items. Thereafter, the state continued to present the rest of its evidence. The defense called no witnesses but introduced various exhibits.
The jury found Jones guilty as charged of first degree murder. After the jury deadlocked at the penalty phase of the trial, the trial court sentenced Jones to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
On appeal, Jones raised several assignments of error, two of which were considered by the court of appeal. In the first of these two assertions of error, Jones claimed the trial court erred in denying his cause challenge of prospective juror Officer Delery. Upon review, the appellate court found no abuse of the trial court's discretion in the denial of this cause challenge. Since the record reflected there was no reason for the cause challenge other than the status of Officer Delery as a police officer, the court of appeal held that no automatic disqualification as a juror was legally valid. The appellate court found no merit to this assignment of error.
However, the court of appeal found merit in a related second claim. Jones argued to the appellate court that the trial court erred in denying his motion for mistrial, made the morning after jury selection when it was discovered that Officer Delery tested evidence in his case. Jones asserted that he exhausted his peremptory challenges. He contended that prejudice resulted when he was forced to use a peremptory challenge to remove Officer Delery, when Officer Delery should have been stricken from the jury venire for cause. Jones claimed that he was effectively deprived of his constitutional right to peremptorily challenge jurors.
*586 The appellate court held the trial court erred in denying Jones' re-urged motion for mistrial. Under La.Code Crim. Proc. Art. 775, a trial court "shall" grant a mistrial "when prejudicial conduct in or outside of the courtroom makes it impossible for the defendant to obtain a fair trial." The court of appeal found that such prejudice occurred here.
The appellate court recognized that Jones would have had a valid cause challenge against Officer Delery had the circumstances of Officer Delery's participation in the investigation of this case been known at the time of jury selection. However, there was no possibility that the defendant could have ferreted out the information during voir dire since Officer Delery himself was not aware of the cases on which he worked by the defendant's name. Moreover, Officer Delery had not been contacted by the state regarding his report since the prosecutor had not read the part of the file which contained Officer Delery's report until after voir dire was completed.
The court of appeal relied upon law which holds that when a trial court erroneously denies a defendant's challenge for cause, and thereafter exhausts his peremptory challenges, prejudice is presumed and reversible error exists. In this case, the appellate court specifically noted there was no error in the trial court's denial of the defendant's challenge for cause. However, the court held that prejudice was presumed and the error was reversible here because of the nature of the right denied and not because the denial was due to an error by the trial court. The court further elaborated that "[a] defendant who is deprived of his constitutional right to peremptory challenges due to circumstances beyond his control is no less deprived of that right than is a defendant who is deprived of the right by a trial court's erroneous denial of his challenge for cause."[2]
A record minute entry reflected that all twelve defense peremptory challenges were expended during voir dire. This fact, coupled with the circumstances surrounding the voir dire of Officer Delery, led the court of appeal to conclude that circumstances beyond the defendant's control amounted to "prejudicial conduct in or outside the courtroom" under La.Code Crim. Proc. art. 775 which operated to make it impossible for him to obtain a fair trial, that is, "a trial in which he was not effectively deprived of his right to peremptorily challenge jurors." Finding that reversible error existed, the court of appeal pretermitted discussion of other assignments of error raised by the defendant, reversed the conviction and remanded the case for further proceedings.[3] We granted the state's writ to review the correctness of this determination.[4]

LAW AND DISCUSSION
The state first maintains that the defendant failed to preserve any claim concerning the alleged loss of a peremptory challenge because the grounds for his mistrial motion were unclear. La.C.Cr.P. art. 841 provides that "[i]t is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefore."
*587 The entire exchange regarding the defendant's cause challenge of Officer Delery was as follows:
DEFENSE COUNSEL:
All right.
I am going to challenge Mr. Delery for cause. He's a police officer with the New Orleans Police Department.
BY THE COURT:
Well, according to the rules of the Supreme Court he is eligible.
I deny the challenge for cause.
DEFENSE COUNSEL:
Respectfully note my objection.
I move for a mistrial.
BY THE COURT:
I deny the motion for the mistrial.
DEFENSE COUNSEL:
Respectfully note my objection.
BY THE COURT:
All right.
Let's make our selections.[5]
Thereafter, the defense excused from the jury venire Officer Delery by using one of its twelve peremptory challenges.[6] The jury was selected and sworn that day.
The next morning, the transcript of the trial begins with the notation that a motion hearing was held in open court outside the presence of the jury.[7] The trial judge announced, "Let's proceed. Let's have the hearing in regard to the jury problem."[8] Thereafter, Officer Delery and the assistant district attorney gave testimony. The transcript then reveals the following:
BY THE COURT:
You're maintaining your motion for a mistrial, sir?
DEFENSE COUNSEL:
One moment.
* * *
(Off-the-Record.)
* * *
DEFENSE COUNSEL:
Yes, I do.
THE COURT:
I'm denying the motion for mistrial and I find that may be there is some negligence in the handling of the case over a period of time, but I find noand this is not my prerogative, but I don't find there's any ethical violation on Mr. Friedman's part. Mr. Friedman just took over this case.
Deny the motion.
DEFENSE COUNSEL:
Respectfully note my objection. Your Honor, may I have a moment before we proceed to opening statements?
BY THE COURT:
All right.... [The trial court then took up other docketed matters before starting back with the trial.][9]
As related above, the defense objected to the trial judge's denial of a cause challenge as to Officer Delery.[10] Immediately thereafter, defense counsel moved for a mistrial, which was denied.[11] There is no doubt that the basis of the mistrial was the denial of the cause challenge of Officer Delery.
*588 After it was discovered that Officer Delery actually performed part of the investigation of the case, a motion hearing was held. The trial judge announced that the hearing was held "in regard to the jury problem." The only testimony adduced at the hearing was in regard to Officer Delery's actual participation in the investigation of the case and the time at which the state became aware of that fact. After the hearing, the trial judge asked defense counsel whether he was maintaining his motion for mistrial, no doubt referencing the motion for mistrial asserted the day before in regard to the denial of the defense cause challenge for Officer Delery. The transcript reveals that a discussion was held off the record. Once back on the record, defense counsel answered in the affirmative. Thereafter, the trial judge denied the motion for mistrial and defense counsel asked to have his objection noted for the record.
It is obvious from the record that the trial judge was aware of the grounds for the defense's objection. The trial judge was informed of the need for a hearing outside the presence of the jury. The only testimony at the hearing referred to Officer Delery's investigation of this matter and when the state became aware of Officer Delery's involvement. There was an off-the-record discussion held after the trial judge specifically referred to the mistrial motion.
"There are no formal or codified requirements detailing any specific form for an objection. All that is required is that a party make clear, at the time an order of the court is made or sought, the action which he desires the court to take, together with an objection and grounds." State v. George, 95-0110 p. 13 (La.10/116/95), 661 So.2d 975, 981. The law requires that "[t]he grounds of counsel's objections must be sufficiently brought to the attention of the trial judge to allow him the opportunity to make the proper ruling and correct any claimed prejudice to the accused." State v. Harris, 414 So.2d 325, 327 (La.1982). We find that defense counsel sufficiently preserved any error for review.
In its second assignment of error, the state maintains the court of appeal erred in holding that mistrial should have been granted, premised on its belief that Jones suffered prejudice because he was allegedly denied his constitutional right to peremptorily challenge jurors. The state contends the factual underpinning for this conclusion is in error due to the court of appeal's reliance on a faulty minute entry which reflects incorrectly that the defendant exhausted his peremptory challenges.
La. Const. art. 1, § 17 provides that a criminal defendant has the right to challenge jurors peremptorily and that the number of challenges shall be fixed by law. In the trial of an offense punishable by death or necessarily by imprisonment at hard labor, such as the first degree murder charged here, the defendant and the state shall each have twelve (12) peremptory challenges. La.C.Cr.P. art. 799. Consequently, when a defendant uses all of his peremptory challenges, a trial court's erroneous ruling which deprives him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights. Prejudice is presumed and the conviction and sentence must be reversed. State v. Jacobs, XXXX-XXXX p. 4 (La.6/29/01), 789 So.2d 1280, 1283; see State v. Cross, 93-1189 p. 6 (La.6/30/95), 658 So.2d 683, 686; State v. Robertson, 92-2660 (La.1/14/94), 630 So.2d 1278, 1280; State v. Ross, 623 So.2d 643, 644 (La.1993).
In order "to prove there has been reversible error warranting reversal *589 of the conviction, defendant need show (1) the erroneous denial of a challenge for cause; and (2) the use of all of his peremptory challenges." Robertson, 630 So.2d at 1281. Moreover, the defendant must show that he objected at the time of the ruling to the court's refusal to sustain a challenge for cause of the prospective juror. Cross, 93-1189 p. 6, 658 So.2d at 686. Although the record shows that the defendant objected timely to the trial court's rulings, Jones cannot show either of the requirements necessary for proving reversible error which would warrant the reversal of his conviction.
The record confirms the court of appeal's holding that the trial judge did not err in denying the defense challenge for cause to Officer Delery at the time the cause challenge was asserted. The sole ground urged by the defense to strike Officer Delery from the jury was his status as a New Orleans police officer. In State v. Ballard, 98-2198 (La.10/19/99), 747 So.2d 1077, this Court held that a person is not automatically disqualified to serve as a juror simply because of his status as a police officer. As noted by the court of appeal, defense counsel did not inquire into any factors relative to the officer's possible bias or impartiality which would have supported a cause challenge under La.C.Cr.P. art. 797.[12] The trial judge did not abuse his broad discretion in denying the cause challenge as to Officer Delery at the time the cause challenge was made. Jacobs, XXXX-XXXX p. 5, 789 So.2d at 1284. The appellate court properly affirmed the trial court ruling.
Additionally, the record reveals that Jones did not use all of his peremptory challenges; thus, he is not entitled to a presumption of prejudice. Our review of the transcript confirms that the defense used only eleven (11) of its twelve (12) peremptory challenges despite a minute entry which shows otherwise.[13] When there is a discrepancy between the minutes and the transcript of the same proceeding, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
The record reflects that the jury selection procedure was bifurcated, as it often is in first degree murder prosecutions. Initially, the prospective jurors were "death-qualified,"[14] during which the court determined whether their views on the *590 death penalty would prevent them from serving as jurors. After several prospective jurors were stricken from the jury venire for cause during this initial part of the voir dire procedure, the trial court continued with a general voir dire.
The first panel of general voir dire consisted of twenty (20) prospective jurors, one of whom was Officer Delery.[15] From this panel, the transcript reflects that the state used six (6) peremptory challenges and the defense used seven (7) peremptory challenges.[16] The remaining seven (7) persons were selected as jurors.[17]
The second panel of general voir dire consisted of thirteen (13) prospective jurors.[18] From the second panel, the transcript reflects the state used three (3) additional peremptory challenges, for a total of nine (9) peremptory challenges used, and the defense used four (4) additional peremptory challenges, for a total of eleven (11) peremptory challenges used.[19] In addition, two (2) prospective jurors from the second general voir dire panel were stricken for cause, both at the urging of the defense.[20] The remaining four (4) persons were selected as jurors, bringing the total number of jurors selected to eleven (11).[21]
The third, and final, panel of general voir dire consisted of nine (9) prospective jurors.[22] Although the final strike conference is not completely transcribed,[23] the transcript reveals that the first-called prospective juror in this third panel was stricken for cause by the court at the urging of the defense.[24] The transcript does not reflect that any peremptory challenges were used by either the defense or the state in this panel. This means that once the cause challenges were complete, the next prospective juror would be seated as the twelfth juror. Indeed, the transcript reflects that the second-called prospective juror in this third panel was seated as the twelfth juror.[25] Likewise, since no peremptory challenges were used during the third general voir dire panel, the prospective juror next in line would be seated as the alternate juror. The transcript shows that this occurred and the third-called prospective juror in the third general voir dire panel was seated as the alternate juror.[26] The remaining six (6) prospective jurors were excused because all the jurors and the alternate juror had been selected.[27]
The inaccurate minute entry may have been based on an equally inaccurate jury selection sheet. That sheet shows that the *591 defense's final peremptory challenge was used on prospective juror # 100, Edward Williams.[28] The transcript, however, reveals that this prospective juror was stricken for cause during the initial "death-qualification" portion of voir dire and was not even a participant in the general voir dire, having been excused before that began.[29]
A careful reading of the entire voir dire procedure shows that all prospective jurors were accounted for and were either excused for cause, excused by peremptory challenge, selected as a juror or excused because the jury had already been selected. This careful reading confirms the state's assertion that the defense used only eleven (11) of its peremptory challenges and so failed to exhaust them.
The defendant has presented no information which shakes our conclusion that the defense failed to exhaust his peremptory challenges. Indeed, appellate defense counsel candidly admitted during oral argument that he had not read the entire voir dire transcript prior to submitting his appellate brief to the court of appeal. He, too, like the court of appeal, relied upon the incorrect minute entry to argue that the defense had exhausted its peremptory challenges. Trial counsel was also present at oral argument. Trial counsel forth-rightly stated that he could not honestly recall the details of the last strike conference and could not, as an officer of the court, assert that any other defense peremptory challenges were used which had not been reflected in the transcript. We conclude that the defense did not exhaust its peremptory challenges.
This Court has held that the defense's failure to exhaust its peremptory challenges bars review on appeal of a claim of an improperly denied peremptory challenge. See State v. Wessinger, 98-1234 p. 15 (La.5/28/99), 736 So.2d 162, 178, cert. denied, 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999) (where the defendant exercised only eight of the twelve peremptory challenges that he is given by La.C.Cr.P. art. 799, "we are not required to reach the issue of whether the trial judge erroneously denied the challenges for cause that are the subject of this assignment of error."); State v. Koon, 96-1208 p. 17 (La.5/20/97), 704 So.2d 756, 767, cert. denied, 522 U.S. 1001, 118 S.Ct. 570, 139 L.Ed.2d 410 (1997) ("... we need not reach the issue of whether failure to dismiss [a prospective juror] for cause was error because the defense did not use all its peremptory challenges."); State v. Mitchell, 94-2078 p. 4 (La.5/21/96), 674 So.2d 250, 254, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996) ("In the instant case, we need not reach the issue of whether there was an erroneous denial of defendant's challenge for cause, since the record reveals that defendant failed to use all his peremptory challenges.").
In recognition of this Court's jurisprudence, Jones argues in the alternative that the special circumstances in this case support a departure from the general rule. Other than arguing that the circumstances here presented a unique situation, the defendant fails to persuade the Court of a need for an exception in this case. The defendant failed to argue, either in brief or at oral argument, that he suffered actual prejudice due to the trial judge's ruling denying his cause challenge of Officer Delery. Officer Delery did not serve on his jury. Jones did not argue that he was forced to accept an objectionable juror due to his exhaustion of peremptory challenges. *592 Nor did Jones argue that he hoarded his remaining peremptory challenge and seated a questionable juror. See State v. Vanderpool, 493 So.2d 574, 575 (La.1986). Consequently, Jones fails to argue or show that he suffered any actual prejudice which would support the mistrial motion.

CONCLUSION
Under these circumstances, where there is no presumption of prejudice because the defendant did not exhaust his constitutionally and statutorily protected peremptory challenges, and where there has been no showing of actual prejudice which resulted from the trial judge's ruling, the court of appeal erred in holding that the defendant's re-urged motion for mistrial should have been granted. There was no effective deprivation of Jones' right to peremptorily challenge jurors, and thus, no grounds upon which to base a mistrial.
REVERSED AND REMANDED TO THE COURT OF APPEAL FOR CONSIDERATION OF THE OTHER ISSUES RAISED BY DEFENDANT ON APPEAL.
WEIMER, J., additionally concurs and assigns reasons.
WEIMER, J., concurring.
I concur in the result while continuing to adhere to my concurrence in State v. Ballard, 97-0233, p. 1 (La.App. 1 Cir. 7/14/98), 718 So.2d 521, 529.
NOTES
[1] As noted by the court of appeal, "[w]hile it is clear that Edward Delery was employed as a forensic light examiner in the New Orleans Police Department Crime Lab, it is less clear that he was a police officer. However, he did not correct the attorneys who addressed him as officer...." State v. Jones, XXXX-XXXX p. 3 (La.App. 4 Cir. 11/26/03), 862 So.2d 266, 268. Consequently, Edward Delery will be referred to in this opinion as Officer Delery.
[2] State v. Jones, XXXX-XXXX p. 8 (La.App. 4 Cir. 11/26/03), 862 So.2d 266, 271.
[3] State v. Jones, XXXX-XXXX (La.App. 4 Cir. 11/26/03), 862 So.2d 266.
[4] State v. Jones, XXXX-XXXX (La.5/7/04), 872 So.2d 1068.
[5] Trial record, p. 210-211.
[6] Id., p. 211.
[7] Id., p. 226.
[8] Id.
[9] Id., p. 243.
[10] Id., p. 210.
[11] Id., p. 211.
[12] La.C.Cr.P. art. 797 provides in pertinent part as follows:

"The state or the defendant may challenge a juror for cause on the ground that:
* * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence; ...."
[13] The September 25, 2001 minute entry provides in pertinent part: "12 jurors and 1 alternate were duly impaneled, accepted by the State and defense, and sworn in as jurors in this case. The State excused 9 juror(s) and the defense excused 12 juror(s),...." Trial record, p. 35.
[14] In State v. Mitchell, 94-2078 p. 4 (La.5/21/96), 674 So.2d 250, 254, cert. denied, 519 U.S. 1043, 117 S.Ct. 614, 136 L.Ed.2d 538 (1996), this Court stated "La.C.Cr.P. art. 798(2)(a), which incorporates the standard of Witherspoon [v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)], as clarified by Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), provides that it is good cause for a state challenge that a prospective juror would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him." The procedure to make this determination is sometimes referred to as "Witherspoon-qualification" or "death-qualification."
[15] Trial record, p. 193-194.
[16] Id., p. 211-212.
[17] Id., p. 212.
[18] Id., p. 212. Although page 213 is missing from the transcript, a careful reading of the subsequent pages confirms that thirteen prospective jurors were questioned and accounted for in the second general voir dire panel.
[19] Id., p. 215-216.
[20] Id., p. 215.
[21] Id., p. 216.
[22] Id., p. 216-217.
[23] The record reveals that none of the strike conferences were transcribed verbatim. Any objections were transcribed in whole, and the transcript notes which prospective jurors were excused peremptorily by the state or defense, as well as those prospective jurors who were ultimately selected as jurors. See Trial record, pp. 210-212, 215-216, 219-220.
[24] Id., p. 219.
[25] Id., p. 220.
[26] Id., p. 220.
[27] Id., p. 220.
[28] Id., p. 61-64.
[29] Id., p. 191.