ROBERTA. CHAISSON, Judge.
12This appeal arises from a series of crimes committed against Hispanic males on the west bank of Jefferson Parish. For the reasons that follow, we affirm defendant’s convictions and sentences and remand the matter for correction of the commitment/minute entry.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Elmo Duronslet, with two counts of armed robbery in violation of LSA-R.S. 14:64 (counts one and three), one count of possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1 (count two), two counts of aggravated battery in violation of LSA-R.S. 14:34 (counts four and seven), and two counts of attempted armed robbery in violation of LSA-R.S. 14:27:64 (counts five and six). At the arraignment, defendant pled not guilty.
The matter proceeded to trial before a twelve person jury which found defendant guilty as charged on all seven counts. On December 13, 2010, the trial judge sentenced defendant as follows: on count one, 50 years at hard labor without |3benefit of parole, probation, or suspension of sentence; on count two, 10 years at hard labor without benefit of parole, probation, or suspension of sentence and a $1,000.00 fine;[1] on count three, 50 years at hard *114 labor without benefit of parole, probation, or suspension of sentence; on count four, 10 years at hard labor; on count five, 40 years at hard labor without benefit of parole, probation, or suspension of sentence;[2] on count six, 40 years at hard labor without benefit of parole, probation, or suspension of sentence; and on count seven, 10 years at hard labor.[3] Defendant now appeals.[4]

FACTS

Around 9:45 p.m. on July 2, 2009, Lucas Mendoza, a soccer coach, was returning home from practice to his apartment in Gretna, Louisiana. After parking his vehicle, he talked to a few people in the parking lot and then proceeded to his apartment. As he walked down the hallway to his apartment, Mr. Mendoza heard someone call him, so he turned around. Upon turning his head, he felt something hit his chest and heard a person address him in English. Mr. Mendoza turned around and saw a black gun in his face. In addition to the person holding the gun, there were two other individuals behind him, kicking and pushing him, trying to get him to kneel down. The perpetrators demanded his wallet and cell phone. Mr. Mendoza began slowly backing up in the direction of the parking lot in an effort to draw the assailants out into view. Upon reaching the parking lot, the gunman’s two accomplices proceeded to take the wallets from the people in the parking lot, while the gunman took Mr. Mendoza’s wallet and cell phone. Mr. Mendoza then |4approached the gunman and asked for his identification back, and when he did so, the gunman shot at him, missed, and fled. The police were called, and an incident report was filled out.[5]
A few days later, at approximately 10:00 p.m. on July 5, 2009, a similar incident occurred at another apartment complex in Gretna. Armando Medina-Martinez was in the parking lot of his apartment complex, and as he was proceeding inside to his second-floor apartment, an individual in a hooded sweater approached him for a cigarette. Mr. Medina-Martinez gave the person two cigarettes and then continued on to his apartment. As he opened the door to the stairwell, he was struck in the back of his head and fell to the ground. He turned to see who had hit him and saw the man who had asked him for a cigarette. This individual struck him again in his forehead with the handle of a black gun. Struggling to ascend the stairs to get somebody’s attention, Mr. Medina-Martinez began wrestling with the gunman who was trying to take his wallet. When he made it to the top of the stairs, Mr. Medina-Martinez was unable to reach his door; and at this moment, he heard a gunshot and realized he had been shot in his left leg. He then managed to knock on his door. His daughter opened the door, and the gunman fled. The police responded to the scene, and Mr. Medina-Martinez was transported to the hospital.[6]
*115 Approximately eight hours later, at approximately 6:10 a.m. on July 6, 2009, Roberto Ruiz and Fredis Padilla, roommates and co-workers, were leaving their west bank apartment for work when a stranger told Mr. Ruiz hello. Mr. Ruiz and Mr. Padilla continued on their way to the parking lot where they got into Mr. Ruiz’s vehicle and waited for the vehicle to warm up. While waiting, Mr. Ruiz, | fiwho was in the driver’s seat, noticed that the stranger who had told him hello was approaching the vehicle. As this individual neared, he took out a black gun, pointed it at Mr. Ruiz, and told him to exit the vehicle. Mr. Ruiz rolled down his window and the gunman demanded his wallet. Mr. Ruiz handed him his wallet, but it was attached to a chain. The gunman ripped the wallet from the chain and then ordered Mr. Ruiz to tell Mr. Padilla to hand over his wallet as well. Mr. Padilla took out his wallet and tried to hand it to the gunman, but it fell to the floor. When Mr. Padilla went to pick it up, the gunman told him not to and demanded he exit the vehicle. Mr. Padilla was too nervous to exit the vehicle, so the gunman ordered Mr. Ruiz to exit the vehicle. When Mr. Ruiz complied, the gunman backed up a few steps, continuing to point the gun at him. The gunman glanced away, looking to see if anybody was around; at this instant, Mr. Ruiz grabbed the gun. As Mr. Ruiz struggled to wrest the gun away, the gunman shot Mr. Ruiz three times in his leg, sending him to the ground where he lay motionless, playing dead. Moments later, after the gunman fled, Mr. Padilla called 9-1-1. After the police arrived, Mr. Ruiz was transported to the hospital.[7]
As a result of police investigation into these incidents, defendant was developed as a suspect. Sergeant John Carroll of the Jefferson Parish Sheriffs Office compiled a photographic lineup which he showed to the victims. Mr. Mendoza, Mr. Ruiz, and Mr. Padilla all positively identified defendant as the perpetrator in the photographic lineup; however, Mr. Medina-Martinez was unable to make an identification of the perpetrator.
Defendant testified in his own behalf at trial. He denied committing these crimes or having any knowledge of the robberies.

JgUFFICIENCY OF THE EVIDENCE

On appeal, defendant challenges the sufficiency of the evidence used to convict him. He specifically contends that the State failed to prove his identity as the perpetrator beyond a reasonable doubt.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. In addition to proving each statutory element of the crime charged, the State must also prove the identity of the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misiden-tification in order to carry its burden of proof. Further, positive identification by *116 only one witness is sufficient to support a conviction. State v. Williams, 08-272 (La. App 5 Cir. 12/16/08), 8 So.3d 526, 529, writ denied, 09-0143 (La.10/16/09), 19 So.3d 470.
A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir 4/15/08), 985 So.2d 234, 240.
In the instant case, defendant does not argue that the State failed to establish any of the essential statutory elements of his convictions, but rather contends that |7the evidence was insufficient to convict because the State failed to negate any reasonable probability of misidentification. He specifically contends that the jury should have realized that a reasonable doubt existed as to the identification of the perpetrator because the initial descriptions given by the victims were inconsistent with defendant’s physical appearance. Defendant points out that the victims did not initially mention scars on the perpetrator’s face, nor did the police reports reflect that he had scars. To further support his argument that defendant was misidentified, defendant notes the variances in the individual victim’s descriptions of the perpetrator, as well as the fact that no gun or other evidence was found during the search of defendant’s car or residence which linked him to any of the crimes. In making his insufficiency argument, defendant specifically focuses on the descriptions and identification testimony given by Mr. Mendoza, Mr. Ruiz, and Mr. Medina-Martinez.
With regard to Mr. Mendoza, defendant claims that his identification of the suspect was unreliable because, at the time of the robbery, he described the gunman as having scratches as opposed to scars. In challenging Mr. Mendoza’s testimony, defendant further points out that this robbery was not consistent with the other robberies because there were three perpetrators, and they i’obbed Mr. Mendoza as well as several other men in the parking lot.
At trial, Mr. Mendoza testified that on July 2, 2009, as he walked to his apartment, he was stopped by three men, one of whom pointed a gun in his face. After these assailants demanded his wallet and cell phone, Mr. Mendoza slowly backed up in the direction of the parking lot to draw the perpetrators out into view. Upon reaching the parking lot, the gunman’s two accomplices took the wallets from the people in the parking lot, while the gunman took Mr. Mendoza’s wallet and cell phone. According to Mr. Mendoza, the gunman had a black t-shirt [Rcovering his face at the time of the incident. However, when they were wrestling, the shirt fell, and Mr. Mendoza was clearly able to see the perpetrator’s face. Mr. Mendoza recalled that the gunman had three scratches on his face and a goatee. At trial, Mr. Mendoza stated that the gunman was only a few inches away from his face, that he was able to observe him at close range for about five minutes, and that he would never forget that face. Mr. Mendoza further recalled that a detective showed him a photographic lineup, and he positively identified defendant as the perpetrator. Mr. Mendoza verified his identification with his signature on the back of the photograph, which was introduced into evidence at trial. Moreover, Mr. Mendoza testified that he was “a hundred percent” certain that defendant was the person who robbed him. On cross-examination, Mr. Mendoza confirmed that on the night of the incident, he *117 told the police that the gunman had scratches on his face. He further testified that he knew the difference between a scar and a scratch. He claimed that when the man had the gun on him, he thought the facial marks were scratches, but now realized they were actually scars.
With regard to Mr. Ruiz, defendant contends there was also a possibility of mis-identification, pointing out that Mr. Ruiz did not initially tell the police that the gunman had a scar. Defendant also notes that Mr. Ruiz’s testimony that he appeared thinner in court than at the time of the robbery contradicted testimony presented at trial that defendant gained weight since his arrest.
At trial, Mr. Ruiz testified that on the morning of July 6, 2009, he and Mr. Padilla were in his ear getting ready to leave for work when a black man with a scar on his face approached the car, pointed a gun at Mr. Ruiz, and demanded their wallets. Mr. Ruiz stated that defendant had a shirt pulled up trying to cover his face; however, he could still see his face as the gunman was very close. Mr. Ruiz identified defendant from the photographic lineup, placing his signature on the |9back of the photograph, which was then introduced into evidence at trial. He also identified defendant in court as his assailant, although he stated that defendant appeared thinner than at the time of the robbery. On cross-examination, the jury heard his testimony that he spoke to police several times after the incident; however, at no time did he tell them that the perpetrator had a scar on his face. Further, the jury heard testimony from defendant, defendant’s mother, and defendant’s sister that defendant had actually gained weight since the time of his arrest.
With regard to this particular incident on July 6, 2009, the jury also heard testimony from Fredis Padilla who was in the car with Mr. Ruiz at the time of the robbery. Mr. Padilla testified that an individual approached Roberto Ruiz’s car, and as he did so, he covered his face with a shirt. He then pointed the gun at Mr. Ruiz and took his wallet. Mr. Padilla stayed in the car while his friend exited, and at that point, Mr. Padilla heard gunshots. Mr. Padilla positively identified defendant as the perpetrator in a photographic lineup. He verified his identification with his signature on the back of the photograph, which was introduced into evidence at trial. In addition, Mr. Padilla positively identified defendant in court as the gunman and testified that he was “a hundred percent” certain of his identification because of the scar on the assailant’s face.
On cross-examination, defense counsel questioned this witness about his identification of defendant and tried to cast doubt on the reliability of his identification by pointing out Mr. Padilla’s taped statement to police. Specifically, in the taped statement, the detective asked Mr. Padilla “today on this day, I came to your house to show you a photograph of 6 men who are the same. Do you recognize anyone in this photo?” Mr. Padilla responded: “I agree, all consider that is number 8, in the first line.” However, on re-direct examination, Mr. Padilla |inmaintained that no one told him who to pick out in the photographic lineup and that he signed his name to the back of photograph number three because that was the individual who had hurt Roberto.
Lastly, to support his theory of misiden-tification, defendant points to Mr. Medina-Martinez’s inability to identify the perpetrator from the photographic lineup. He also points out that Mr. Medina-Martinez did not indicate in his initial description to the police that the gunman had a scar.
At trial, Mr. Medina-Martinez testified that on July 5, 2009, as he was going to his *118 apartment, an individual in a hooded sweater approached and asked him for a cigarette. After giving this person two cigarettes, Mr. Medina-Martinez proceeded to his apartment, and as he opened the door, he was struck in the back of the head by the man who had asked for the cigarette. Mr. Medina-Martinez described the perpetrator as a black male with a black gun. Although the perpetrator wore a hood around his face, the victim was able to see that he had something on the right side of his face, like a burn or a scar. Mr. Medina-Martinez admitted at trial that he was unable to make a positive identification of the perpetrator; however, he maintained that he had a scar on his face.
In the present case, the jury heard the testimony presented at trial, including any inconsistencies in the testimony regarding the scars on defendant’s face, his facial hair, and his weight. The jury also heard the differences between the initial descriptions given by the victims in relation to defendant’s actual physical appearance. The jury heard all the discrepancies in the evidence presented and obviously gave more credibility to the evidence which pointed to defendant as the perpetrator. It is the fact finder’s function to determine the weight of the evidence bearing on the defendant’s identification. It is not the appellate court’s function to reevaluate the credibility choices made by the fact finder. State v. Williams, 02-64511 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 502, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.
In the instant case, Mr. Mendoza positively identified defendant in a photographic lineup as the perpetrator and testified at trial that he was one hundred percent certain that defendant was the perpetrator. With regard to Mr. Ruiz and Mr. Padilla, they likewise identified defendant in a photographic lineup as the gunman and additionally identified defendant in open court as the perpetrator. They, too, maintained that they were certain of the perpetrator’s identity.
With regard to Mr. Medina-Martinez, there was no positive identification of the perpetrator; however, he testified at trial that the gunman had a scar on his face. Further, the jury was presented with the ballistics evidence of Meredith Acosta, an expert in firearms examination and comparison. She testified that she was one hundred percent certain that the cartridge case found at the scene of the shooting of Mr. Medina-Martinez was fired from the same weapon which discharged the cartridge cases found at the scene of the shooting of Mr. Ruiz, where defendant was identified by both Mr. Ruiz and Mr. Padilla as the gunman in that shooting. Moreover, the modus operandi of the attempted armed robbery of Mr. Medina-Martinez matched the modus operandi of the other crimes.[8] In particular, the three incidents occurred within days of one another and took place in or around the parking lot of the victims’ residences, which are all located on the west bank of Jefferson Parish near defendant’s former or current residences. Further, the victims were all Hispanic males who were robbed, or were attempted to be robbed, of their wallets at gunpoint. Lastly, all the victims described their assailant as having a scar on his face.
112Based on the foregoing discussion and viewing the evidence in a light most favorable to the prosecution, we find that the *119 State sufficiently negated any reasonable probability of misidentification, and a rational trier of fact could have found, beyond a reasonable doubt, that defendant was the perpetrator of the charged offenses. Accordingly, the arguments raised by defendant in this assigned error are without merit.

ERROR PATENT REVIEW

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals one error that requires correction.
We note that the commitment/minute entry is inconsistent with the transcript in that it does not reflect that defendant was fined $1,000 on count two. To ensure an accurate record, we remand and direct the district court to correct the commitment/minute entry to bring it into conformity with the sentencing transcript. We further instruct the clerk of court to transmit the amended commitment/minute entry to the officer in charge of the institution to which the defendant has been sentenced as well as to Louisiana Department of Public Safety and Corrections General Counsel. See LSA-C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846.
For the reasons set forth herein, we affirm defendant’s convictions and sentences and remand the matter to the district court for correction of the commitment/minute entry.

CONVICTIONS AND SENTENCES AFFIRMED, REMANDED WITH INSTRUCTIONS.

. The sentences on counts one and two were imposed concurrently with one another, but consecutively to all other counts.

. The sentences on counts three, four, and five were imposed concurrently with one another, but consecutively to all other counts.

. The sentences on counts six and seven were imposed concurrently with one another, but consecutively to all other counts.

. Subsequent to original sentencing, the State filed a multiple offender bill of information alleging defendant to be a second felony offender; however, the multiple offender proceedings are not part of the instant appeal.

. For the crime committed against Lucas Mendoza, defendant was charged with and convicted of armed robbery (count one).

. For the crimes committed against Armando Medina-Martinez, defendant was charged with and convicted of attempted armed robbery (count six) and aggravated battery (count seven).

. For the crimes committed against Roberto Ruiz, defendant was charged with and convicted of armed robbery (count three) and aggravated battery (count four). With regard to the acts against Fredis Padilla, defendant was charged with and convicted of armed robbery (count five).

. The Louisiana Supreme Court has long sanctioned the use of other crimes evidence to show modus operandi as it bears on the question of identity when the prior crime is so distinctively similar to the one charged, espe-dally in terms of time, place, and manner of commission, that one may reasonably infer that the same person is the perpetrator in both instances. State v. Hills, 99-1750 (La.5/16/00), 761 So.2d 516, 521.