STEPHEN J. WINDHORST, Judge.
| ^Defendant, Glen Lampkin, was convicted of one count of aggravated rape and one count of indecent behavior with juveniles. Defendant was sentenced to a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence on the count of aggravated rape and a concurrent sentence of 25 years at hard labor, the first two years of which are without benefit of parole, probation or suspension of sentence on the count of indecent behavior with juveniles. This appeal followed. For the reasons stated, we affirm and remand.

PROCEDURAL ANALYSIS:

In this case, defendant was convicted by a twelve-person jury. Defendant’s motion for appeal was filed and granted on Febru *162 ary 16, 2011. Subsequently, defendant was sentenced on February 18, 2011.
Pursuant to La.C.Cr.P. art. 916, a trial court is divested of jurisdiction upon granting the defendant’s motion for appeal. State v. Sims, 09-509 (La.App. 5 Cir. 2/12/10), 33 So.3d 340, 343, writ denied, 10-0596 (La.10/8/10), 46 So.3d 1264. Once the trial court is divested of jurisdiction, it has no jurisdiction to take any action except as provided by law or to:
|sl. Extend the return day of the appeal, the time for filing assignments of error, or the time for filing per cu-riam comments in accordance with Articles 844 and 919.
2. Correct an error or deficiency in the record.
3. Correct an illegal sentence or take other appropriate action pursuant to a properly made or filed motion to reconsider sentence.
4. Take all action concerning bail permitted by Title VIII.
5. Furnish per curiam comments.
6. Render an interlocutory order or a definitive judgment concerning a ministerial matter not in controversy on appeal.
7. Impose the penalty provided by Article 844.
8. Sentence the defendant pursuant to a conviction under the Habitual Offender Law as set forth in R.S. 15:529.1.
La.C.Cr.P. art. 916.
Ordinarily, a premature appeal need not be dismissed when a sentence is imposed after the defendant’s motion for appeal is filed. State v. Washington, 98-69 (La.App. 5 Cir. 1/26/99), 727 So.2d 673, 675 (citation omitted). Here, the trial court lacked jurisdiction to impose sentence pursuant to La.C.Cr.P. art. 916. A defendant can appeal from a final conviction only where sentence has been imposed. State v. Chapman, 471 So.2d 716 (La.1985); State v. London, 316 So.2d 743 (La.1975).
Although this appeal is premature because the trial court lacked jurisdiction to impose sentence, we find State v. Brooks, 633 So.2d 816, 818 (La.App. 4 Cir.1994), writ denied, 94-1939 (La.9/3/96), 678 So.2d 548, to be applicable in the present case. In Brooks, as in this case, the defendant’s motion for appeal was granted prior to the imposition of sentence. Id. The Fourth Circuit did not dismiss that appeal, quoting State v. Martin, 483 So.2d 1223, 1225 (La.App. 4 Cir.1986):
The Louisiana Supreme Court and this court, in handling similar situations in civil actions where an appeal was granted prior to the signing of the judgment, have refused to dismiss the appeal. Matter of Parker, 399 So.2d 607 (La.1981). Palmer v. Wren, 361 So.2d 1206 (La.1978); City of New Orleans v. Kirzner, 447 So.2d 66 (La.App. 4 Cir. 1984), writ denied, 466 So.2d 1303 (La.1985). We choose to follow a similar line of thinking in criminal cases on point Lwith the one at bar. Dismissing the appeal would simply result in a delay of the appellate process, and hinder defendant’s right to appeal. Accordingly, we conclude that where a sentence is imposed after defendant’s motion for appeal is filed and granted, the appeal will not be dismissed.
Under the circumstances of this appeal, defendant’s motion for appeal should not be dismissed as this would only result in a delay of defendant’s right to appellate review.

FACTS:

On September 27, 2009, at 10:05 P.M., Deputy Ian Donahue of the Jefferson Par *163 ish Sheriffs Office responded to a report of an aggravated rape at 1537 London Cross Road in Harvey, Louisiana. Upon arriving at the scene, Deputy Donahue identified and spoke with the victim, R.D., and her mother, M.D.[1] The deputy determined that a rape had occurred.
Detective Donald Zanotelli arrived on the scene and learned that the rape of R.D. had occurred earlier in the evening sometime between 5:00 and 6:00 P.M. The detective recovered the victim’s clothing worn during the incident and turned them over to the crime scene technicians. Through his investigation, Detective Zano-telli determined defendant to be the prime suspect. Initially, Detective Zanotelli was given the name “George.” He subsequently learned that the perpetrator’s name was Glen Lampkin, whose alias was “George.” On September 28, 2009, he presented R.D. with a photographic lineup, from which she immediately identified defendant as the perpetrator. Detective Zanotelli obtained and executed an arrest warrant for defendant.
Dr. Carmen Begue, an emergency room physician at Children’s Hospital, performed an examination of R.D. Dr. Begue testified that the lower half of R.D.’s |shymen had a “mark with a themal redness,” was “completely swollen” or “markedly swollen,” and that this was indicative of acute trauma. She also observed an abnormal amount of vaginal secretion.
Ms. Staci Lanza, a forensic interviewer with Children’s Advocacy Center (CAC), conducted a recorded interview with R.D. R.D. stated that she was outside when “George” grabbed her by the arm and dragged her into a nearby backyard, covering her mouth with his hand to stifle her screams. He pulled his pants down, pulled R.D.’s pants down, and “stuck his thing in [her] private part.” The defendant then touched her vagina with his lips. R.D. also stated that on a previous occasion, defendant had showed her his penis in the same backyard. R.D. stated that she was ten years old at the time of both incidents.
At trial, R.D. consistently and firmly testified that “George” raped her in a backyard. She explained that George put his private part inside her private part. She also testified that on a previous occasion George had showed his private part to her.
M.D., the victim’s mother, testified that around 4:00 or 5:00 P.M. on September 27, 2009, R.D. told her that she had been raped that day by “George.” M.D. further testified that R.D. told her that George had shown R.D. his penis on or about September 4, 2009. M.D. identified defendant, Glen Lampkin, as “George” in open court.
Ms. Diane Calvin, defendant’s niece, testified that in September 2009 defendant lived next door to her at 916 Verges Street,[2] which is about ten to fifteen minutes away from London Cross Road. On September 27, 2009, around 3:30 or 4:00 P.M., Ms. Calvin and her children were returning home from watching the |fiSaints game at a neighbor’s house. As she made her way home, Ms. Calvin observed defendant peeking out his front door, looking to wash his clothes at her house and to get something to eat. Ms. Calvin invited defendant over, and he visited for about two *164 hours, from roughly 4:00 to 6:00 P.M. Ms. Calvin did not see defendant leave during that time frame but acknowledged that defendant was not at her house the whole time he was washing his clothes.
Defendant testified that on September 27, 2009, he watched the Saints game with M.D. at a mutual friend’s house near London Cross Road. Prior to the game, he accompanied R.D. and her younger sister to a corner store to buy them candy. He described the younger sister as “really nice,” while R.D. was “bad.” Defendant teased R.D. by telling her he wasn’t going to buy her anything, although he did, but he still gave the younger sister more candy. This angered R.D. and she told her mother, “Oh I don’t like George no more.” After the game, defendant called a cab and headed home to Vernon Street in Gretna around 4:00 P.M. When he arrived home, he went to his niece’s house to get something to eat and to wash his clothes. He testified that he never returned to the area of London Cross Road that day and denied raping R.D. and exposing himself to her.
Daniella Blandón, an expert in the field of forensic serology with the Jefferson Parish Sheriffs Office Crime Lab, performed tests and analyses on the swabs and clothing taken from R.D. The genital and vaginal swabs revealed the absence of seminal fluid or sperm. These tests also revealed the absence of seminal fluid or sperm on the victim’s shorts, shirt, and underwear.
Pursuant to a stipulation, the State introduced into evidence a prior conviction of defendant in which he pled guilty to carnal knowledge of a juvenile in 1996. This conviction was based on a relationship defendant had with a | fourteen year old female, whom he later married, had four children with, and subsequently divorced.

DISCUSSION:

In defendant’s third assignment of error,[3] he argued that the evidence was insufficient to sustain his convictions for aggravated rape and indecent behavior with juveniles. He alleged that there were no witnesses, no seminal fluid was discovered on the victim’s clothing or person, and the victim was unable to identify him as the perpetrator in court. Defendant further argued that the circumstances of R.D.’s identification of him from the photographic lineup cast doubt upon the reliability of that identification.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 *165 So.2d 234, 240. The reviewing court is required to consider the whole record and | sdetermine whether any rational trier of fact could have found guilt beyond a reasonable doubt. Id.
In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied sub nom., State ex rel. Dixon v. State, 08-0987 (La.1/30/09), 999 So.2d 745. Furthermore, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. Id. at 153-54. See also, State v. Richoux, 11-1112 (La.App. 5 Cir. 9/11/12), 101 So.3d 483; State v. Roca, 03-1076 (La.App. 5 Cir. 1/13/04), 866 So.2d 867, 874-76, writ denied, 04-0583 (La.7/2/04), 877 So.2d 143; State v. Gaddis, 07-395 (La.App. 5 Cir. 11/13/07), 973 So.2d 21, 25-26, writ denied sub nom., State ex rel. Gaddis v. State, 08-0156 (La.10/10/08), 993 So.2d 1277.
R.D. testified at trial and during her CAC interview that the defendant put “his private part” into her “private part,” and that defendant showed his penis to her. Dr. Begue testified that the lower half of R.D.’s hymen had redness and was “completely swollen” or “markedly swollen,” which is indicative of acute trauma. She also observed an abnormal amount of vaginal secretion.
Defendant further argued that the evidence was insufficient because R.D. failed to identify him as the perpetrator in court. During the direct examination of R.D., the following exchange occurred:
Q: Okay. And I know you — you were holding your eyes. I know you don’t want to look. But do you see George here today?
A: No. I don’t see him quite, because I’m scared.
|flQ: You’re scared. Okay. I know you don’t want to look at him. Thank you.
And during cross-examination, the following exchange occurred:
Q: Okay. Now you say you — you knew a guy named George, isn’t that right?
A: Yes.
Q: But you don’t see him here today?
A: I don’t see him because I’m scared.
In view of this testimony, it would have been reasonable for the jury to conclude that R.D.’s failure to identify defendant as the perpetrator in court was a result of fear and not an inability to identify.
Defendant also argued that R.D.’s identification of him from the photographic lineup was unreliable because it is unclear whether R.D.’s mother was present when R.D. identified defendant. Specifically, Detective Zanotelli’s testimony varied as to whether R.D.’s mother was present in the room. At one point, Detective Zanotelli said R.D.’s mother was present and at another he said that she had left the room.
Despite this slight discrepancy as to who was present when R.D. identified defendant from the lineup, Detective Zano-telli consistently testified that R.D. “immediately” identified defendant as the perpetrator. After identifying defendant, R.D. affixed her name, date, and the suspect number on the back of the lineup. There is no evidence to show that Detective Za-notelli or anyone else influenced R.D. in the identification of defendant as the perpetrator.
*166 It is a function of the trier of fact to determine the weight of the evidence bearing on the defendant’s identification. State v. Duronslet, 11-486 (La.App. 5 Cir. 1/24/12), 87 So.3d 112, 118, writ denied sub nom., State ex rel. Duronslet v. State, 12-0472 (La.9/12/12), 98 So.3d 815. It is presumed that jurors considered discrepancies in testimony in assessing credibility and weight of testimony. It is 110not the appellate court’s function to reevaluate the credibility choices made by a properly instructed jury.
In this case, the jury heard testimony from all the witnesses, including R.D. and defendant, considered all the evidence, and determined that the State had proven the defendant guilty of these offenses beyond a reasonable doubt. Viewing the foregoing evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found that the State proved beyond a reasonable doubt that the defendant committed aggravated rape and indecent behavior with a juvenile. This assignment of error is without merit.
In his first assignment of error, defendant argued that his due process rights were violated because the appellate record lacked transcripts of the voir dire and opening statements.
La. Const. Art. I, § 19 provides that “[n]o person shall be subjected to imprisonment ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.” La.C.Cr.P. art. 843 requires, in all felony cases, the recording of “all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel.”
A defendant has a right to a complete transcript of the trial proceedings, particularly where, as in this case, appellate counsel was not counsel at trial. State v. Cheatteam, 07-272 (La.App. 5 Cir. 5/27/08), 986 So.2d 738, 746. Material omissions from trial court proceedings bearing on the merits of an appeal require reversal. Id. However, a slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal does not require reversal of a conviction. Id. A defendant is not entitled to relief | nbecause of an incomplete record absent a showing of prejudice based on the missing portions of the transcript. Id.
Defendant’s motion for appeal requested an order directing the clerk of court “to lodge the entire record including but not limited to all Pre-Trial, Trial and Post-Trial proceedings, with all testimony adduced in connection therewith, ... in accordance with C.Cr.P. art. 914.1.” The trial court granted the motion and ordered the clerk of court to lodge in this Court “the entire record of these proceedings including, but not limited to, all Pre-Trial, Trial and Post-Trial proceedings and testimony in connection therewith.”
La.C.Cr.P. art. 914.1(A) provides in pertinent part: “The party making the motion for appeal shall, at the time the motion is made, request the transcript of that portion of the proceedings necessary, in light of the assignment of errors to be urged.” Subsection (B) provides: “A transcript of any portion of the proceedings which does not relate to anticipated assignment of errors shall not be furnished to a party for purposes of appeal.”
The appellant bears the burden of furnishing the appellate court with a record of the proceedings below. State v. Shaw, 00-1051 (La.App. 5 Cir. 2/14/01), 785 So.2d 34, 42, writ denied, 01-0969 *167 (La.2/8/02), 807 So.2d 861. Any inadequacy of the record is imputable to the appellant. Id.
The defendant did not specifically request a transcript of voir dire, nor were any assignments of error relating to voir dire raised. Defendant failed to show how he was prejudiced by the missing voir dire transcript. The missing portion of the record concerning jury selection is not evidentiary and therefore, its absence did not compromise the defendant’s constitutional right to a judicial review of all evidence. State v. Neely, 08-707 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 537 writ denied, 09-0248 (La.10/30/09), 21 So.3d 272. In order to prove reversible error | ^regarding jury selection, the defendant must show: (1) the erroneous denial of a challenge for cause; and (2) that all of his peremptory challenges were used. State v. Jones, 03-3542 (La.10/19/04), 884 So.2d 582, 588-89. A defendant’s failure to exhaust his peremptory challenges bars review on appeal of a claim of an improperly denied peremptory challenge. Id. at 591. In this case, the minute entry reflects that the defendant used 11 of his 12 peremptory challenges and defense counsel failed to raise any objections. See La.C.Cr.P. art. 799. The defendant failed to show how he was prejudiced by the absence of the voir dire transcript. See Neely, 3 So.3d at 537-38; State v. Goodbier, 367 So.2d 356, 357 (La.1979).
A review of the record reveals that defendant did not request a transcript of the opening statements and defendant merely asserted that he was prejudiced by their absence. Without more, this allegation does not entitle defendant to relief. Additionally, the record indicates that no objections were lodged before or during opening statements. Pursuant to La. C.Cr.P. art. 841(A), an irregularity or error cannot be raised after a verdict unless an objection was made at the time of occurrence. With no objections during the opening statements, defendant did not preserve this issue for appellate review. See State v. Richards, 96-0331 (La.App. 4 Cir. 12/22/99), 750 So.2d 330, 333, writ denied sub nom., State ex rel. Richards v. State, 03-2574 (La.10/15/04), 883 So.2d 1052. This assignment of error is without merit.
In his second assignment of error, defendant argued that when instructing the jury prior to trial, the trial court misstated the law concerning jurors taking notes, and as a result, defendant was deprived of the opportunity for jurors to take notes.
La.C.Cr.P. art. 793(A) provides in pertinent part: “Except as provided in Paragraph B of this Article, a juror must rely upon his memory in reaching a | isverdict. He shall not be permitted to refer to notes or to have access to any written evidence.” Paragraph B of the article provides in pertinent part: “A juror shall be permitted to take notes when agreement to granting such permission has been made between the defendant and the state in open court but not within the presence of the jury.”
Prior to trial, the court instructed the jury: “You must rely upon your memory and may not take notes; thus it is very important that you pay close attention.” We find that the trial court properly stated the law. A jury is not permitted to take notes unless the defense and State agree. The record does not reveal any such agreement, and therefore the jurors were not permitted to take notes. Accordingly, the trial court’s instruction to jurors was correct.
The record also shows that there was no objection to this instruction, and in the absence of an objection, there was no response by opposing counsel and no consideration of the issue by the trial court. In the absence of a contemporaneous ob- *168 jeetion, the issue is not preserved and there can be no judicial review. La. C.Cr.P. art. 841(A). This assignment of error is without merit.
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The record does not reflect that defendant was notified of the sex offender registration requirements. Defendant’s convictions for aggravated rape and indecent behavior with juveniles are defined as sex offenses by La. R.S. 15:541(24). La. R.S. 15:540, et seq., requires registration of sex offenders and La. R.S. 15:543(A) requires the trial judge to provide written notification of the registration requirement of La. R.S. 15:542 and La. R.S. 15:542.1 to the defendant. A trial court’s failure to provide this notification constitutes an error patent and |14warrants a remand for written notification. State v. Pierce, 11-320 (La.App. 5 Cir. 12/29/11), 80 So.3d 1267, 1279. Accordingly, we remand this matter to the trial court for the purpose of providing defendant with the appropriate written notice of his sex offender notification and registration requirements, using the form contained in La. R.S. 15:543.1.

CONCLUSION:

The defendant’s convictions and sentences are affirmed and the proceeding is remanded to provide defendant with the appropriate notification consistent with this opinion.

AFFIRMED AND REMANDED

. The victim’s initials, as well as the initials of the victim's family members, are used under the authority of La. R.S. 46:1844(W)(3), which allows the court to identify a crime victim who is a minor, or a victim of a sex offense, by using his or her initials.

. It is noted that defendant testified he lived on Vernon Street in Gretna. It appears "Verges Street" is a transcription error.

. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La. 1992). If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. Accordingly, we address the sufficiency of the evidence before defendant’s other assignments of error.