JUDE G. GRAVOIS, Judge.
| ¡¡Defendant, Michael Videau, appeals his convictions on seven counts of sex crimes against five child victims, as described below. On appeal, his appointed counsel argues that defendant’s constitutional right *1074 to confront his accusers was violated at trial by the admission of the video-taped interview of one of the child victims without appellant being able to effectively confront and cross-examine her. Defendant also filed a pro se supplemental brief, wherein he argues that the evidence adduced at trial was insufficient to convict him of the offenses, that he was denied his right to a proper judicial review on direct appeal because the appellate record is incomplete, and that his appointed appellate counsel was ineffective.
After thoroughly reviewing the entire record, including a supplemental record, we find no merit to the assignments of error urged. Accordingly, defendant’s convictions and sentences are affirmed. The matter is remanded to the trial court for compliance with the instructions set forth in our errors patent review.
| ¿PROCEDURAL HISTORY
On May 3, 2012, a Jefferson Parish grand jury indicted defendant with aggravated rape upon a known female (DOB: 3/9/1987), in violation of La. R.S. 14:42 (Count 1); aggravated oral sexual battery upon a known female (DOB: 3/9/1987), wherein the victim was under the age of 12, in violation of La. R.S. 14:43.4 (Count 2)[1]; molestation of a known juvenile (DOB: 3/9/1987), being two years older than the known juvenile, in violation of La. R.S. 14:81.2 (Count 3); aggravated rape upon a known juvenile (DOB: 4/16/2007[2]), particularly penile/oral sexual intercourse and/or oral/vaginal sexual intercourse, in violation of La. R.S. 14:42 (Count 4); indecent behavior with a known juvenile (DOB: 5/1/2006), wherein there is an age difference of greater than two years between the two persons, and the victim is under the age of 13, in violation of La. R.S. 14:81 (Count 5); sexual battery upon a known juvenile (DOB: 10/14/2002), wherein the victim was under the age of 13, in violation of La. R.S. 14:43.1 (Count 6); and sexual battery upon a known juvenile (DOB: 9/28/2004), wherein the victim was under the age of 13, in violation of La. R.S. 14:43.1 (Count 7).
At his arraignment on June 20, 2012, defendant pled not guilty to all charges. On August 2, 2012, the trial court granted defendant’s request to view the statements of the victims. On January 8, 9, and 10, 2013, the ease was tried before a 12-per-son jury. On January 10, 2013, the jury found defendant guilty of the responsive verdict of sexual battery on Count 1, guilty as charged on Counts 2, 3 and 4, guilty of indecent behavior with a juvenile on Count 5, and guilty of sexual battery on Counts 6 and 7.
|,¡¡On January 30, 2013, defendant moved for a new trial on the grounds that the trial court had erred in denying his objection to the introduction of the video interviews of the victims. In particular, defendant argued that the video statements of the victims violated his constitutional right to confrontation because witness J.S.L. would only testify that defendant “did bad things” and that she “did not remember” what the “bad things” were. Defendant also argued that the testimony was contradictory in that the witnesses’ statements conflicted with each other and with themselves. Following a hearing held on Feb *1075 ruary 4, 2013, defendant’s motion for a new trial was denied.
After waiving sentencing delays, defendant was sentenced on February 4, 2013 as follows: 10 years imprisonment at hard labor on Count 1; 20 years imprisonment at hard labor on Count 2; 15 years imprisonment at hard labor on Count 3; life imprisonment at hard labor on Count 4; 25 years imprisonment at hard labor on Count 5; and 99 years imprisonment at hard labor on each of Counts 6 and 7. The trial court ordered that all counts be served concurrently with each other. The court also ordered that Count 4 be served without the benefit of parole, probation, or suspension of sentence. On that same date, defendant filed a written motion for an appeal in open court, which was granted.

FACTS

This appeal concerns several different charges of sexual abuse affecting five different victims: T.L. (DOB: 3/9/1987; Counts 1, 2, and 3), who is also the mother of victims J.S.L. (DOB: 5/1/2006, Count 5) and J.L. (DOB: 12/16/2007[3], Count 4); I.L., (DOB: 9/28/2004, Count 7), and H.J. (DOB: 10/14/2002, Count 6).
Defendant had been married to Karen Videau since 1990. At the time Mrs. Vi-deau married defendant, she had four children: two girls, A.L. and C.L.M., and Ifitwo boys. A.L. had a daughter, I.L. (the victim in Count 7), who was 8 years old at the time of trial. C.L.M. also had a daughter, H.J. (the victim in Count 6), who was 10 years old at the time of trial. Also, Mrs. Videau’s godchild, T.L. (the victim in Counts 1, 2, and 3, and the mother of the victims in Counts 4 and 5), lived with the Videaus when she was a child. Thus, the victims in this case are the “step-goddaughter” of defendant, her two children, and two step-granddaughters of defendant.
T.L., who was 25 years old at the time of trial, testified that she is the goddaughter of Karen Videau, and lived with her and defendant from the time she was around two until she was approximately nine, when she returned to her mother, and then again in high school until her senior year. She testified that when she was between the ages of six and nine, defendant sexually abused her using digital vaginal contact and hand to vaginal area on multiple occasions, both at home and in his truck. She also testified that one time defendant sexually abused her using oral sexual contact, vaginal area to mouth. T.L. further testified that one other time, defendant sexually abused her using penis to vaginal contact. She said that defendant did not sexually abuse her when she was in high school. T.L. testified that she never told anyone about these incidents because she was afraid of the impact it would have on her family.
As an adult, T.L. lived in California with her two young daughters, but moved back to Jefferson Parish with her daughters when they were three and four years old. She testified that she moved back in with defendant and her godmother because she believed defendant had changed, because he was now a deacon in his church. She also felt that his attitude had changed.
At trial, T.L. testified that on January 4, 2012, while looking for J.S.L. in order for her to take her bath, she walked in the open doorway to defendant’s room |7and saw defendant rubbing J.S.L.’s “booty” “like a grown woman.” T.L. testified that defendant was lying in his bed with J.S.L. sitting on top of him and straddling his lower stomach. The lower half of both J.S.L.’s and defendant’s bodies were un *1076 derneath the bed sheets, and defendant was not wearing a shirt. T.L. was unable to determine whether defendant was wearing pants underneath the bed sheet. J.S.L. had clothes on and was wearing shorts.
T.L. testified that defendant jumped when she called J.SJL.’s name. T.L. brought J.S.L., along with J.L., to the bathroom and asked J.S.L. what defendant had been doing. T.L. testified that J.S.L. was hesitant at first, but then stated that defendant was “rubbing her butt.” T.L. asked J.S.L. and J.L. whether defendant had done anything else to them. T.L. testified that J.L. began crying and appeared “scared out of her mind” as if she were in trouble. T.L. testified that J.S.L. disclosed to her that defendant made J.L. “suck his wiener.” T.L. testified that when first asked, J.L. did not say anything; however, after T.L. asked her again, J.L. disclosed that defendant made her “suck his wiener.”
T.L. immediately informed Mrs. Videau of J.S.L. and J.L.’s disclosures. Mrs. Vi-deau called defendant for an explanation. Mrs. Videau and T.L. both testified that defendant stated that he and J.L. were wrestling or “horsing around.” T.L. testified that defendant stated that J.L. bit defendant’s penis.
On January 4, 2012, deputies were called to the Videau residence. Defendant was then transported to the detective bureau for questioning. After midnight, Detective Kay Horne of the Jefferson Parish Sheriffs Office (“JPSO”) advised defendant of his rights and informed him that he was under investigation for aggravated rape. Defendant made two statements that night.[4] In his first statement, defendant said that he was lying in the bed watching television, when |sJ.S.L. jumped on his stomach and asked him for ice cream. Defendant said that J.S.L. was straddling him on his stomach, that he was under the bed sheet, and J.S.L. was partly under the sheet. He stated that when T.L. entered the room, he was lifting J.S.L. off of him to give her some pecan candy. Defendant stated that J.S.L. was wearing clothes, and he grabbed her around her waist and hip area to get her off of him. He denied touching J.S.L. on her buttocks area.[5]
In this statement, defendant stated that T.L. accused him of molesting J.L. and J.S.L., and she also accused him of molesting her when she was a child. He said that he explained that he kissed T.L. and held her as they slept. Defendant also denied that J.L. had his penis in her mouth. He explained that when he and J.L. were wrestling, J.L. fell on the floor, and she bit and pulled defendant’s shorts. Defendant stated that J.L. bit his inner thigh close to his penis. He said that when J.L. bit his groin, J.S.L. said that J.L. had defendant’s penis in her mouth, and he told her not to say that because someone might misunderstand.
Detective Horne testified at trial that based on her knowledge and experience, she determined that defendant’s answers were not entirely honest. She testified that while verifying things with the mother and children, another incident was disclosed concerning defendant licking J.L.’s vaginal area, which led Detective Horne to question defendant again and take a second statement.[6] In his second statement, *1077 defendant denied licking J.L. intentionally on the vaginal area. Defendant explained that he blew on J.L.’s belly button, and that his face may have touched her unintentionally. He also said that J.L. may have assumed that he was licking her and that it might have happened in her mind. Defendant denied touching either child on their private parts with his tongue.
| ¡¡Following these disclosures on January 4, 2012, Mrs. Videau called her daughter, C.L.M., to find out if defendant had ever touched C.L.M.’s daughter, H.J., who had lived with the Videaus for several years following Hurricane Katrina. C.L.M. testified that she asked H.J. whether defendant had touched her anywhere including her chest, “butt,” or “private area,” to which H.J. responded in the negative. C.L.M. testified that she never told H.J. the reason she had asked her whether defendant had touched her.
Nevertheless, H.J. later disclosed on March 24, 2012 that defendant had touched her inappropriately. This disclosure was prompted by I.L.’s disclosure on the same day that defendant had also touched her inappropriately. On that day, Deputy Nicki Gamier of the JPSO responded to a 911 call from 1448 Dogwood Drive in reference to a possible sexual battery. Deputy Gamier questioned H.J. with his supervisor, Detective Jay Clofer, and Mrs. Videau being present. He testified that when he asked H.J. what was wrong, she responded that her grandfather had touched her private area. Deputy Gamier said that H.J. was crying and very upset. Deputy Gamier testified that H.J. disclosed that from the time she was six years old, every time she returned home from church, her grandfather touched her while her grandmother took a nap. He testified that H.J. stated that her grandfather touched her between her legs underneath her underwear on her bare skin. After Hurricane Katrina, H.J. lived with Mrs. Videau and defendant for several years until her mother moved back to New Orleans. After her mother’s return, H.J. would still visit on weekends and sleep over on Saturday nights in order to attend church with Mrs. Videau and defendant on Sunday mornings, during which times the abuse occurred. Her trial testimony was substantially the same.
ImOn April 5, 2012, Suzanne Jolisant, a forensic interviewer with the Children’s Advocacy Center (“CAC”), interviewed H.J. at the CAC.[7] In her medical examination, the CAC interview and at trial, H.J. described substantially the same sequence of events.[8] H.J. would spend the night at Mrs. Videau and defendant’s house on Saturday nights in order to attend church with them on Sunday mornings. She testified that defendant touched her “private part” on her skin under her clothes and panties.
H.J. testified that the last time defendant touched her was in December on the last day of Kwanzaa (a week-long African heritage celebration).[9] She testified that there was a party at Mrs. Videau’s house, *1078 and after everybody went home, defendant touched her like he would normally touch her with his hand on her private part on her skin. She testified that she did not tell anyone about this because she did not want to get in trouble.
H.J. testified that the first people she told about the touching were the two police officers who came to the house, including Detective Horne. She testified that after Mrs. Videau told her to tell the truth, she made the disclosures to the police officers because she did not want to get in trouble, and she felt she had to get it off of her chest. She testified that she told the police officers the truth, and everything she said in court that day was the truth. H.J. testified that she did not know what had happened to J.L. and J.S.L., and they never told her anything. She also testified that defendant never “whooped” her.
Deputy Gamier testified that he next questioned I.L. and observed that she was “hysterical” and crying. I.L. (the daughter of Mrs. Videau’s other daughter), lnwho was eight years old at the time of trial, testified that defendant sexually abused her using digital vaginal contact, hand to vaginal area, more than once. The record indicates that I.L. would often visit Mrs. Videau and defendant after school and on weekends and holidays, when the abuse occurred.
These new allegations against defendant were referred to Detective Horne, who continued to have an open investigation on defendant after his previous arrest in January of 2012. Detective Horne interviewed I.L. and H.J. separately at the detective bureau. After speaking to I.L. and H.J., Detective Horne referred both I.L. and H.J. to Children’s Hospital and the CAC.
On April 5, 2012, Ms. Jolisant interviewed I.L. at the CAC.[10] In her medical examination, CAC interview, and at trial, I.L. described substantially the same sequence of events. I.L. testified at trial that while in defendant’s bedroom, defendant touched her with his hand on the body part she used to urinate. I.L. testified that when defendant touched her, she and defendant were in defendant’s bed. She testified that defendant touched her skin under her clothes and panties. I.L. testified that after defendant touched her, she left the room. She testified that similar incidents happened more than once. In her CAC interview, I.L. stated that she was six years old when defendant touched her, and defendant was still touching her when she was seven years old. I.L. testified that defendant told her not to tell anyone.
On cross-examination, I.L. testified that when defendant touched her, no one else was in the bed. She testified that she remembered telling Dr. Jackson that J.L., H.J., and J.S.L. were also in the bed with her. I.L. testified that although she and defendant were on opposite sides of the bed, defendant was able to touch her | ^because she switched with J.S.L., and defendant touched her after she moved. I.L. testified that defendant would “whoop” her, J.L., H.J., and J.S.L. if they •told.
I.L. testified that her mother talked to her about what happened with J.L. and J.S.L., and she admitted to telling her mother that defendant had never touched her. She testified that she did not know why she told her mother that. I.L. testified that she was telling the truth when she disclosed to Mrs. Videau that defendant had touched her.
*1079 Dr. Jaime Jackson, a child abuse pediatrician at Children’s Hospital, who was qualified as an expert in the field of child abuse pediatrics, performed medical examinations on J.S.L., J.L., and I.L. soon after their disclosures. Dr. Jackson testified that all of the examinations revealed normal findings non-specific for sexual abuse. She said that she would not expect to have physical findings based on the substance of the complaints. She testified that children with possible sexual abuse have normal or non-specific genital exams 90 to 95 percent of the time, which could occur for many different reasons.
Although Dr. Jackson did not examine H.J., who was examined by a different medical professional, Dr. Jackson testified that she reviewed HJ.’s medical records. Dr. Jackson testified that during the history portion of the exam, H.J. disclosed to a nurse practitioner a history of sexual abuse by defendant involving digital vaginal contact on more than one occasion. Dr. Jackson testified that H.J.’s physical examination was consistent with her complaint history. She testified that H.J. had non-specific or normal findings.
Dr. Jackson also testified that delayed disclosure is very common, and that most of the time, the children she had examined have waited a long time before disclosing the incident. She testified that a majority of children are unlikely to disclose abuse for at least a month to a year, and some studies have shown an |13average of five years. Dr. Jackson testified that this delayed disclosure is consistent with the ages of the children in this ease. In addition, she testified that J.S.L. and I.L. both stated that defendant said he would “trip them” or “whoop them” if they attempted to tell their grandmother.
In addition to the testimony of the foregoing witnesses, the State also presented the testimony of D.H. to establish defendant’s intent as per La. C.E. art. 412.2.[11] D.H. testified that defendant molested her when she was a child. She provided that defendant was previously married to her cousin, Darleen Walker. D.H. testified that she was 42 years old at the time of trial and that Ms. Walker was seven to ten years older than her. D.H. testified when she was about seven or eight years old, she would spend the night or visit Ms. Walker and Mr. Videau when they lived in Christopher Homes in Algiers.
D.H. testified that when she was seven or eight years old, one incident occurred during a car ride with defendant. D.H. testified that defendant was lying on the seat, and then defendant put his mouth in her vagina. D.H. testified that defendant also put his penis in her vagina. She testified that defendant then asked her which she liked better, the first or the second thing. D.H. testified that she told defendant she liked the first thing better because it did not hurt as much. D.H. testified that defendant told her not to tell anyone, and she did not say anything to Ms. Walker when they returned to the house.
D.H. testified that she did not tell anyone about this incident because defendant was in her family, and being a little girl, she did not know that what had happened *1080 was wrong. D.H. testified that there was another incident, when she was 114lying on the floor of the house, and defendant was sitting on the floor rubbing her back. D.H. testified that Ms. Walker became angry at defendant.
D.H. testified that the first person she disclosed the sexual abuse to was her grandmother, who has since died. D.H. testified that when she told her grandmother, she was in middle school and was about 12 or 13 years old. She testified that she delayed disclosure because everything went on “as business as usual.” D.H. also testified that she thought that it was normal because she had heard about similar incidents in her family. D.H. testified that she finally had the courage to disclose to her father in 2010 by writing him a letter. D.H. testified that in early 2012, her father sent her a newspaper clipping about defendant having been arrested. She testified that at the time, she was living in Virginia, and her father was living in Gretna, Louisiana. D.H. testified that she contacted the newspaper reporter, who referred her to the District Attorney’s office. D.H. testified that she did not know Mrs. Videau or any of the victims in the present case.
Ms. Walker testified on behalf of the defense that she was married to defendant for nine years, and D.H. was her first cousin. She testified that when D.H. was about seven or eight years old, she visited her house about two or three times during her marriage to defendant. Ms. Walker testified that D.H. never mentioned being molested by defendant. Ms. Walker also repudiated D.H.’s claims that defendant beat Ms. Walker. Ms. Walker did not believe that the defendant ever molested or raped D.H.
Defendant called several witnesses who all testified that defendant had a good reputation in the community and within his church. Elvin Collins, a deacon at Second New Pleasant Zion Baptist Church, testified that defendant was helpful, trustworthy, and had a good reputation at the church, as did Beverly Thomas, who 11Bworked at the church, and Reverend Alex Cotton, pastor of the church. Ruth Molaison testified that she had known defendant for 37 years and worked with defendant’s mother. Ms. Molaison testified that although she and defendant attended different churches, they visited one another’s churches. She testified that defendant had an excellent reputation within the community.
Defendant testified in his own defense. He denied the allegations that he had ever sexually touched any of the victims, including D.H. He explained all of the incidents for which he was under indictment as either horseplay or wrestling, or an act that had happened unintentionally. For example, in reference to the incident where J.S.L. said he licked her vagina, he explained that he had blown “raspberries” on her stomach and perhaps his face was too close to her private area.
Defendant denied J.S.L.’s allegation that he had put his penis in J.L.’s mouth and testified that that did not happen. He testified that J.S.L. made the allegation because of an incident the next day when he walked into his room and found J.S.L. and J.L. jumping on his bed. He testified that he grabbed J.L. and pulled her off the foot of the bed. Defendant testified that when J.L. came down, she bit at him and grabbed at him. He testified that when he pulled J.L.’s head back, she had his shorts in her mouth. Defendant testified that he pulled his shorts out of J.L.’s mouth. He testified that J.S.L. said that J.L. was “sucking” his “thing,” and he told J.S.L. not to say that. He testified that he explained to J.S.L. that .if anyone heard her, they would misunderstand and he would *1081 get in trouble. Defendant testified that the interaction was not intentional.
Defendant testified that it was a very emotional scene in early January that led to him being in the police station. He testified that T.L. appeared upset, but did not appear to be faking her anger, or to be unauthentic when she accused defendant of the charges. Defendant testified that T.L. was accusing him of hurting her baby 116and that any mother would react in that way. He testified that he did not know T.L.’s motives. Defendant testified that while they were discussing the allegations, T.L. broke down and started talking about when she was young.
Defendant denied T.L.’s allegations and testified that he did not put his penis in T.L.’s vagina, lick her vagina, or touch her vagina and private parts. Defendant testified that until 2011, and during the times T.L. lived with them, he was a regional truck driver and was home only around four days per month. Defendant testified that he never brought T.L. in the truck to have oral, or penile to vaginal, sex with her, or to molest her in anyway.
Defendant indicated that T.L. may have been led to making these allegations against him by an altercation they had in 2005 when she was in high school living in his house. Defendant, Mrs. Videau, and T.L. all described an incident where T.L. and defendant got into a physical fight over a disagreement they had at the house, which resulted in T.L. moving out.
Defendant testified that when I.L. and H.J. both made the allegations that defendant touched their genitals, he was in jail, and he first became aware of those allegations as he was being booked. Defendant testified that he often interacted with the children, and he never did anything inappropriate to any of them. Defendant testified that H.J. and I.L. were both lying and made up their allegations, which were not authentic. Defendant testified that although H.J.’s testimony was emotional, and he saw her tears, H.J. put on a show during her testimony, the CAC interview, and the medical examination.
Defendant testified that D.H. visited him when she was a child; however, he denied all of D.H.’s allegations. He testified that he never “beat” Ms. Walker to force her to allow him to take D.H. in his car. He testified that of the six females |17who came forward stating that that he sexually abused them when they were all under ten years old, two of them were mistaken, and the others were lying.
PRO SE ASSIGNMENT OF ERROR NUMBER ONE[12]

Sufficiency of the evidence

In his first pro se assignment of error, defendant argues that the evidence introduced at trial, when viewed under the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, was insufficient to prove all elements of the offenses beyond a reasonable doubt. In particular, defendant argues that if the testimony is internally inconsistent or is in conflict with the physical evidence, then the testimony should not be relied upon in upholding the conviction. Defendant asserts that as the testimony is “so incredible,” it should merit review and ultimate acquittal under the Jackson standard. Defendant argues that there was reason *1082 able doubt as to the validity of the allegations because of the inconsistencies in the victim’s statements and testimony at trial and the lack of any physical evidence to support any of the allegations. He also argues that each witness’s testimony was uncorroborated. Defendant asserts that due to the witnesses’ lack of credibility, the State failed to prove the elements of the offenses beyond a reasonable doubt.
In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Lampkin, 12-391 (La.App. 5 Cir. 5/16/13), 119 So.3d 158, 164-65. A review of the record 11sfor sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Lampkin, supra.
In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the court, is sufficient to support a conviction. Furthermore, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. Id. (citing State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied sub nom., State ex rel. Dixon v. State, 08-0987 (La.1/30/09), 999 So.2d 745). It is presumed that jurors consider discrepancies in testimony in assessing credibility and weight of testimony. It is not the appellate court’s function to reevaluate the credibility choices made by a properly instructed jury. Id., 119 So.3d 158 at 166.
In his pro se brief, defendant disputes the credibility of the victims’ testimony. Defendant specifically argues that T.L.’s testimony that she saw him rubbing her daughter’s “booty” under the sheet should not be believed because T.L. did not react appropriately, i.e., by “screaming” when she saw it. He further argues that she could not have seen under the sheet. He argues that the only reason she took the child in another room was to coach the child’s answer, not to find out what was happening.
Defendant also disputes that T.L. was telling the truth about the alleged sexual abuse when she herself was a child. Defendant argues in brief that her testimony should not be believed because she waited so long to tell about it, when 113she could have called the police when she was a child. He argues in brief that she cannot be believed because she moved back in with him when she was an adult. He argues that because she is a liar, her daughters are also.
Defendant further argues that J.S.L. was coached about what to say at trial, but that frequently in her testimony, she either didn’t know what happened, forgot what happened, or repeated something that someone else told her, such as that he also abused her mother when she was a child. As such, he argues, her testimony was not credible.
Regarding the testimony of H.J., defendant argues that her testimony at trial should not be believed because when her mother C.L.M. first asked her if defendant had ever touched her, she denied it. De *1083 fendant argues that her first answer to her mother should be regarded as more credible than her trial testimony. Regarding the testimony of I.L., he argues that her claims are suspect because she admitted the allegations of sexual abuse only after she heard her mother and aunt screaming about it. Defendant argues that this case is about one family member starting something and everyone else joining in.
As noted above, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. Defendant does not argue that the victims’ testimonies, if believed, did not establish the elements of each offense, but rather argues that their testimonies are not believable for the reasons he stated above. The jury heard the testimony of all of the victims (except for J.L., who did not testify), all of whom were subject to cross-examination, and determined that they made credible witnesses. In the case of the child victims, except J.L., the jury heard their testimonies, as well as their CAC taped interviews, and reports of their discussions with the health care | ^professionals who physically examined them (through the testimony of Dr. Jackson). The jury was fully aware of any alleged inconsistencies in their testimonies, and still found that the witnesses were credible.[13] There is no evidence that any child was coached in her testimony.
Defendant argues that the physical evidence, ie., the results of the children’s medical examinations as reported by Dr. Jackson, does not support their allegations. However, Dr. Jackson testified that children with possible sexual abuse have normal or non-specific genital exams 90 to 95 percent of the time. She also explained that she would not have expected to have physical findings based on the substance of their complaints.
In State v. Roca, 03-1076 (La.App. 5 Cir. 1/13/04), 866 So.2d 867, 874, writ denied, 04-0583 (La.7/2/04), 877 So.2d 143, the defendant argued on appeal that the evidence was insufficient to support his conviction of aggravated rape, aggravated rape of a juvenile, oral sexual battery of a juvenile, and molestation of a juvenile upon multiple victims. At trial, the victims testified about the sexual acts they were each forced to engage in with the defendant. Id., 866 So.2d at 875-76. Notwithstanding the lack of medical evidence, this Court found the testimony of the victims was sufficient to support a finding of guilt. Id.
As Dr. Jackson testified, the physical evidence in the instant case is not inconsistent with the testimony from the victims. We find that the testimonies of the victims presented no internal contradiction or irreconcilable conflicts with physical evidence presented in this case.
Defendant complained that the testimonies of witnesses T.L., I.L., and H.J. should be discredited because they delayed disclosure of the abuse, and in the case of I.L. and H.J., denied it when first asked, but later admitted it. However, as 12inoted above, Dr. Jackson testified that delayed disclosure was both common for child victims and consistent with the ages of the victims. Her testimony was uncon-tradicted. Accordingly, the jury heard expert testimony that delayed disclosure does not, in and of itself, discredit the testimony of a victim who discloses the abuse well after it occurs. We find no merit to defendant’s assignment of error in this regard.
*1084 Defendant further argues that the children’s testimony about their good grades in school, as well as the lack of evidence regarding any behavioral changes, shows that he did not commit the crimes. He theorizes in brief: “We all know that kids this age that are sexually abused as the victims alleged by any adult, will have a change in their behavior, but this wasn’t the case with any of these victims, and this court should find that strange.” Defendant’s theory in this regard is not supported by any evidence, expert or otherwise. We find no merit to this assertion.
Viewing the foregoing evidence in the light most favorable to the prosecution, we find that any rational trier of fact would have found that the State proved, by sufficient evidence, beyond a reasonable doubt that defendant committed the sexual offenses for which he was convicted. Defendant’s pro se assignment of error number one is without merit.

COUNSELED ASSIGNMENT OF ERROR

Confrontation Clause violation

In his only counseled assignment of error, defendant argues that his constitutional right to confront his accusers was violated by the admission of J.S.L.’s video-taped interview without defendant being able to effectively confront and cross-examine her. He argues that he was denied the opportunity to confront J.S.L. about the contents of the forensic videotape due to J.S.L.’s refusal or inability to answer any questions asked by the State or by the defense regarding the | ^.particulars of the charged offenses committed against her or J.L. Defendant asserts that J.S.L.’s videotaped interview was the critical evidence offered to support the aggravated rape count committed against J.L., who did not testify herself due to her age.
Defendant asserts that the videotaped interview should not have been admitted because La. R.S. 15:440.5(A)(8)[14] requires the witness to be available to testify at trial in order for the video to be admissible. Defendant argues that J.S.L.’s inability or refusal to answer any pointed questions regarding defendant’s alleged sexual assault against her or J.L. made J.S.L. essentially “unavailable” to testify at trial.
Defendant notes that the special procedures for protecting children who are victims of abuse contain strict requirements that are to be followed with exactitude in order to ensure that the rights of defendants to confront adverse witnesses and test the reliability of their testimony are not compromised. Defendant asserts that during her testimony, J.S.L. was not questioned about the videotape in the presence of the jury, did not adopt its contents, and did not vouch for its truthfulness. Defense counsel asked J.S.L. questions regarding what happened to her and what she saw happen to J.L. Though she was able to state where it happened and describe other situational facts, she would not say what defendant did to her, replying more than once that she “forgot” what the “bad stuff’ was that defendant alleged *1085 ly did to her. Defendant argues that this error was not harmless, and no juror could hear J.S.L.’s videotaped statement describing the alleged acts without it affecting their consideration of the rest of the evidence against defendant. ^Defendant argues that his convictions and sentences should be reversed, and he should be retried on all counts.
The State argues that defendant is precluded from raising this claim on appeal because he failed to raise it in the trial court. The State asserts that defendant never argued at trial that the admission of J.L.’s videotaped interview violated his rights under the Confrontation Clause when J.S.L. was unable to remember details of the crime. The State argues that instead defendant made a “general objection” to the video-taped interviews. The State asserts that defense counsel’s objection was based on the inability to cross-examine when the videotapes were played and that the videotapes were contradictory to other statements. The State argues that the new basis that the witness’s inability to remember details of the crime made her unavailable cannot be raised for the first time on appeal.
The State also argues that defendant’s assignment of error has no merit. The State asserts that defense counsel cross-examined J.S.L. regarding her inability to recall many details of the crime. The State argues that J.S.L.’s inability to recall many of the details of the crime was not a statutory violation and did not deny defendant’s constitutional rights to confrontation. The State notes at the time of trial, J.S.L. was six years old and was attempting to recall traumatic events that had occurred from 2011 through 2012. The State asserts that J.S.L. was able to answer certain questions about the night in question. The State argues that J.S.L.’s inability to recall details of the crimes in question goes to the weight of the evidence before the jury and not the admissibility of the videotape. The State asserts that it met the statutory requirements of La. R.S. 15:440.5.
Upon review, we find that defendant failed to preserve his right to appeal the inadmissibility of the videotape on the grounds that J.S.L.’s unresponsiveness 124during her testimony rendered her “unavailable” as per La. R.S. 15:440.5 and the Confrontation Clause. La.C.Cr.P. art. 841(A) provides that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” La.C.Cr.P. art. 841(A) requires a party to make known to the court “the action which he desires the court to take, or of his objections to the action of the court, and the grounds thereof.”
In order to preserve the right to appellate review of an alleged trial court error, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. State v. McClain, 04-98 (La.App. 5 Cir. 6/29/04), 877 So.2d 1135, 1144, writ denied, 04-1929 (La.12/10/04), 888 So.2d 835 (citing La.C.Cr.P. art. 841). A new basis for an objection may not be raised for the first time on appeal. Id. (citing State v. Johnson, 03-620 (La.App. 5 Cir. 10/28/03), 860 So.2d 180, 187, writ denied, 03-3171 (La.3/19/04), 869 So.2d 849). The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem. It is also intended to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. Id.
In McClain, on appeal from his conviction for indecent behavior with a juvenile, *1086 the defendant argued that the introduction of the videotaped interview of the victim at trial was error because at trial, she refused to testify about the incident. At trial, however, the defendant objected to the introduction of the videotape on the ground that it was premature as the victim had not been called to testify. After the State responded that the witness would testify, the trial court admitted the tape into evidence and played the tape for the jury. In the videotaped interview, the victim described the circumstances and the acts committed by the 125defendant in detail. However, at trial, the victim selectively testified about the day of the incident and stated that she did not remember much. She further testified that she did not remember the defendant doing anything to her.
Defense counsel cross-examined the victim; however, he did not inquire into the incident. At the conclusion of the victim’s testimony, the defendant failed to renew or lodge a new objection to the admissibility of the videotape. Prior to resting, the State sought to admit all of the exhibits including the previously admitted videotaped interview. The defendant again failed to renew his objection to the admissibility of the videotape.
In ruling on the assignment of error, this Court found that the defendant never objected to the admissibility of the videotape on the basis of the victim’s unavailability at the trial court level. This Court further stated that the defendant failed to assert during or after the victim’s testimony that the victim was an unavailable witness due to her responses, and the defendant failed to suggest that defendant was unable to effectively cross-examine the victim. Therefore, this Court found that this issue was not preserved for appellate review because the defendant was raising a new ground for his objection on appeal that was not raised at the trial court.
In the present case, defense counsel made a “general objection” to the showing of the CAC videotaped interviews of J.S.L., H.J., and I.L. in globo. He raised this objection on the grounds that he was unable to cross-examine the videotaped statements, and the videotaped statements were contradictory to other statements. When the State sought to admit the videotapes and play them for the jury, defense counsel stated that his previous objection was a continuing objection.
Similar to McClain, supra, defense counsel in the present case failed to renew his objection during or after J.S.L.’s testimony and failed to lodge a new [ 2r,objection based on the ground that she was an unavailable witness due to her unresponsiveness. Defendant again failed to renew his objection to the admissibility of the videotape when the State sought to admit all of the exhibits, including the previously admitted videotaped interview of J.S.L. prior to concluding its case.
Defendant never objected to the admissibility of the videotape on the basis of the victim’s unavailability at the trial court level until after the verdict, contrary to the provisions of La.C.Cr.P. art. 841(A). Not until his motion for a new trial did defendant first object to the introduction of the videotaped interview on the ground that J.S.L. was unavailable due to her unresponsiveness at trial. Accordingly, defendant is barred from review of this issue on appeal.
PRO SE ASSIGNMENTS OF ERROR *1087 NUMBERS TWO AND THREE[15]

Incomplete record on appeal

Ineffective assistance of appellate counsel

Defendant argues that several parts of the trial were not transcribed and made part of the appellate record. In particular, defendant argues that the appellate record is missing the opening and closing arguments, the jury charges,[16] bench conferences and other off-record discussions, and the voir dire proceedings. Defendant asserts that the incomplete record has denied him a proper errors patent review. Defendant further claims that the incomplete record makes the whole record defective and precludes a proper review on appeal. Defendant asserts that he did not waive his right to a complete record on appeal.
[27In addition, defendant argues that appellate counsel was ineffective because appellate counsel filed an appellate brief on an incomplete record when he did not represent defendant at trial. Defendant asserts that appellate counsel should have requested that the record be supplemented to include the aforementioned omitted parts. In particular, defendant complains that appellate counsel only filed one assignment of error and that at least appellate counsel should have raised the first two pro se assignments of errors in his counseled brief.
La. Const. Art. I, § 19 provides that no person shall be subjected to imprisonment without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. La. C.Cr.P. art. 843 requires, in all felony cases, the recording of “all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel.”
A defendant has a right to a complete transcript of the trial proceedings, particularly where, as in this case, appellate counsel did not represent defendant at trial. Material omissions from trial court proceedings bearing on the merits of an appeal require reversal; however, an inconsequential omission from it which is immaterial to a proper determination of the appeal does not require reversal of a conviction. A defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcript. State v. Lampkin, 119 So.3d at 166 (citing State v. Cheatteam, 07-272 (La.App. 5 Cir. 5/27/08), 986 So.2d 738, 746).
La.C.Cr.P. art. 914.1(A) provides in pertinent part that: “The party making the motion for appeal shall, at the time the motion is made, request the transcript of that portion of the proceedings necessary, in light of the assignment of errors to be 12Rurged.” La.C.Cr.P. art. 914.1(B) provides that: “A transcript of any portion of the proceedings which does not relate to anticipated assignment of errors shall not be furnished to a party for purposes of appeal.”
The appellant bears the burden of furnishing the appellate court with a rec *1088 ord of the proceedings below, and any inadequacy of the record is imputable to the appellant. State v. Lampkin, 119 So.3d at 166-67 (citing State v. Shaw, 00-1051 (La.App. 5 Cir. 2/14/01), 785 So.2d 34, 42, writ denied, 01-0969 (La.2/8/02), 807 So.2d 861).
In the present case, the record reflects that defendant did not specifically request a transcript of the opening and closing arguments, the jury charges, bench conferences and other off-record discussions, or the voir dire proceedings. Further, he has failed to show how he was prejudiced by the missing portions of the record. Additionally, defendant failed to raise any assignments of error related to the missing portions of the transcript. Therefore, we find that the record is sufficient for a proper appellate review.
In addition, defendant argues that his appellate counsel was ineffective during his appeal because counsel filed an appellate brief on an incomplete record and failed to request that the record be supplemented to include voir dire, opening and closing arguments, jury charges, and bench conferences and off-record discussions. Defendant also argues that appellate counsel filed a frivolous appellate brief because he only raised one assignment of error and failed to raise the assignments of error that defendant subsequently filed pro se.
A claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than on direct appeal. When the record contains sufficient evidence to rale on the merits of the claim and the issue is properly raised by assignment of error on appeal, it may be addressed |29in the interest of judicial economy. State v. Chappell, 11-148 (La.App. 5 Cir. 12/28/11), 83 So.3d 216, 223.
In the present case, the record is sufficient for us to address defendant’s claims. In order to prove ineffective assistance of counsel, the defendant must show that counsel’s performance was deficient and that this deficiency prejudiced the outcome. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). To show that counsel was deficient, the defendant must demonstrate that counsel failed to meet the level of competency normally demanded of attorneys in criminal cases. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
Defendant argues that appellate counsel was ineffective for not obtaining the before-mentioned missing portions of the transcript; however, defendant has failed to allege a specific error during those portions of the proceedings. La. C.Cr.P. art. 914(B) requires that any requested transcript of a portion of proceedings relate to the anticipated assignment of errors. Absent such an alleged error, appellate counsel was unable to order the missing portions of the transcript. La. C.Cr.P. art. 914(B); see also State v. Guillory, 95-383 (La.App. 3 Cir. 1/31/1996), 670 So.2d 301, 305-06. Accordingly, defendant has failed to show that his appellate counsel was ineffective in this regard.
Defendant has also failed to show that appellate counsel was ineffective by filing an appellate brief with only one assignment of error and for excluding the assignments of error that defendant subsequently filed pro se. To prove that counsel’s performance was deficient, a defendant must show “that counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment” based on “an objective standard of | ^reasonableness.” *1089 Strickland, 466 U.S. at 687-88, 104 S.Ct. at 2052. The attorney need not advance every argument, regardless of merit, urged by appellant. State ex rel. Cockerham v. Butler, 515 So.2d 1134, 1138 (La.App. 5 Cir. 11/9/1987) (citing Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)). Therefore, defendant has failed to show that appellate counsel was ineffective. Based on the foregoing, defendant’s pro se assignments of error numbers two and three are without merit.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters require correction.
Lack of notification of sex offender registration requirements
First, the record does not reflect that defendant was notified of Louisiana’s sex offender registration requirements in accordance with La. R.S. 15:540, et seq. Defendant’s convictions for sexual battery, aggravated oral sexual battery, and molestation of a juvenile upon T.L. committed between March 9, 1993 and March 8, 1997[17]; sexual battery upon H. J. committed between February 13, 2008 and January 1, 2012; sexual battery upon I.L. committed between September 28, 2010 and January 4, 2012; and aggravated rape upon J.L. and indecent behavior with a juvenile upon J.S.L. both committed between February 1, 2010 and January 4, 2012; were all defined as “sex offenses” at the times of their commission.[18] See La. R.S. 15:542(E) (1998-1997); La. R.S. 15:541(14.2)(a) (2008); La. R.S. _1^15:541(25)(a) (2010); La. R.S. 15:542(A) (2008-2012); La. R.S. 15:541(24) (2011-2012).
La. R.S. 15:540, et seq., requires registration of sex offenders and La. R.S. 15:543(A) requires the trial judge to provide written notification of the registration requirement of La. R.S. 15:542 and La. R.S. 15:542.1 to the defendant. Accordingly, the trial court’s failure to provide this notification constitutes an error patent and warrants a remand for written notification. State v. Lampkin, 119 So.3d at 168 (citing State v. Pierce, 11-320 (La.App. 5 Cir. 12/29/11), 80 So.3d 1267, 1279-80). This is the case even where a life sentence has been imposed. See State v. Williams, 09-48 (La.App. 5 Cir. 10/27/09), 28 So.3d 357, 368-69, writ denied, 09-2565 (La.5/7/10), 34 So.3d 860. Accordingly, we remand the matter to the trial court for purposes of providing defendant with appropriate written notice of his sex offender notification and registration requirements, using the form contained in La. R.S. 15:543.1.

Lack of notification of prescriptive period for seeking post-conviction relief

Second, the trial court failed to inform defendant of the prescriptive period for seeking post-conviction relief. Accordingly, on remand, the trial court is instructed to properly advise defendant of the prescriptive period under La.C.Cr.P. art. 930.8 by written notice within ten days *1090 of the rendition of this Court’s opinion; and then, to file written proof in the record that defendant received such notice.

CONCLUSION

For the reasons assigned above, defendant’s convictions and sentences are affirmed. The matter is remanded to the trial court for compliance with the instructions set forth in our errors patent review.

AFFIRMED; REMANDED WITH INSTRUCTIONS.

. La. R.S. 14:43.4 was repealed in 2012 to incorporate "aggravated oral sexual battery” into the definition of "aggravated rape.” See La. R.S. 14:41(A); La. R.S. 14:42(A); State v. B.A.S., 02-1131 (La.App. 3 Cir. 2/5/03), 838 So.2d 155, 157.

. The indictment lists the birthdate of the victim of Count 4 (J.L.) as 4/16/2007; however, T.L. (J.L.’s mother) testified that J.L.’s date of birth is 12/16/2007.

. See footnote 2.

. The JPSO rights of arrestee form for defendant was admitted into evidence.

. An audio recording of defendant’s first interview on January 5, 2012 and a transcription of that audio recording were admitted into evidence.

.An audio recording of defendant’s second interview on January 5, 2012 and a transcrip *1077 tion of that audio recording were admitted into evidence.

. This interview was audio and video recorded. The DVD recording of J.S.L.’s interview was admitted into evidence and published to the jury.

. H.J. testified that she did not give a detailed account to Dr. Jackson or anyone who worked at Children’s Hospital.

.The prosecutor stated that the State and the defense stipulated that the last day of Kwanzaa was January 1, 2012, and defendant testified that he had no reason to dispute that Kwanzaa was celebrated between December 26 and January 1.

. This interview was audio and video recorded. The DVD recording of J.S.L.’s interview was admitted into evidence and published to the jury.

. La. C.E. art. 412.2 states in pertinent part:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

. When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Granger, 12-193 (La.App. 5 Cir. 10/30/12), 103 So.3d 576, 583, writ denied sub nom., State ex rel. Granger v. State, 12-2587 (La.4/26/13), 112 So.3d 840 (citing State v. Hearold, 603 So.2d 731, 734 (La.1992)).

. Defendant argues that inconsistencies in their testimonies cast doubt upon their sto-ríes, but he does not specify any particular inconsistencies.

. La. R.S. 15:440.5(A)(8) states:
A. The videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if:
(8) The protected person is available to testify.

. Defendant's pro se assignments of error numbers two and three have been combined for the purpose of this opinion because the issues raised therein are related.

. The record includes written jury charges; however, it is unclear whether these were the actual jury instructions charged to the jury. The record reflects that the jury charges were not included in the transcript because they were not requested. However, this Court ordered that the record be supplemented with the transcript of the jury charges.

. It is well settled that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 520. Also, it is noted that the date ranges for the commission of all of the offenses are based on the victims’ and witnesses’ testimony at trial.

. La. R.S. 15:541(24)(b) provides that the definition of "sex offense” includes "aggravated oral sexual battery” (formerly La. R.S. 14:43.4 (repealed 2012)).